**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Bobby IMPSON, Defendant-
Appellant.**

**No. 73-1500.**

United States Court of Appeals,
Fifth Circuit.
July 12, 1973.

Melvyn Carson Bruder, Bennie R. Juarez, Dallas, Tex., for defendant-appellant.

Frank D. McCown, U. S. Atty., Ft. Worth, Tex., Charles D. Cabaniss, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.

PER CURIAM:

This is an appeal from a conviction for possession of counterfeit currency in violation of 18 U.S.C.A. § 472. No issue other than the validity of the search and seizure of the incriminating evidence either warrants or requires any discussion. On the merits these other contentions are all rejected. Whether the conviction stands affirmed or has to be vacated for a retrial depends upon the

hearing which we require incident to the search and seizure.

Sometime on the 16th day of July, 1971, Secret Service Agent Gary Wistrand reported to the police authorities in Wichita Falls, Texas that James Bobby Impson and Robert Donald Annett would be in the vicinity of Wichita Falls, possibly en route to Sheppard Air Force Base, in a gold-colored 1965 Thunderbird automobile and would be carrying counterfeit money wrapped in a Kentucky Fried Chicken container. At about 11:20 P.M. Officer Jack Cox of the Wichita Falls police, who had been briefed on this information prior to going on duty that day, spotted the car and ordered it to pull over and once halted, asked the occupants to step out. The only basis for stopping the vehicle was the report received. The officer asked for identification and each showed identification indicating that they were the persons named in the Secret Service Agent's telephonic alert. Cox then looked into the car and saw in plain view on the rear seat the Colonel Sanders Kentucky Fried Chicken container. In the forward section of the car he noticed "some loose change and cash (bills) laying in the console."[1] Presumably expecting to find the booty, not a thigh, the officer opened up the package and there, of course, was the bogus money.

The difficulty in the case arose from the procedural handling of the suppression hearing prior to the first trial of defendant Impson and the stipulated use made at that time of transcripts from an earlier hearing for co-defendant Annett. The chronological sequence reveals how the district judge was inadvertently misled.[2] Given the confused state of the record, it is understandable that the trial court thought the stipulation in ef-

[1.] Trial Transcript pp. 47–48.

[2.] On October 25, 1971, a suppression hearing was conducted on behalf of Annett. Defendant Impson, with his then counsel, was present under subpoena by the Government for possible use on the trial, but no proceedings were had which specifically related to Impson. At least three

times during the 1971 hearing, counsel for Annett made statements that he did not question "probable cause."

For example, there was this exchange between Court and counsel:

"THE COURT: So we won't waste a lot of time in this case—Mr. Drake, have a seat. Mr. Spence, your motion says that there is no probable cause—

fect adopted for Impson a wavier of the probable cause issue by Annett's counsel.

■ We do not question in the least the correctness of the principle that the searching-arresting officer can act on the basis of information of which he has no personal knowledge which has been relayed to him by police transmission facilities. But if that is the sole cause for the detention and resulting search—as it apparently was here—then the government has the burden of showing that the information on which the action was based *itself* had a reasonable foundation. Whitely v. Warden of Wyoming Penitentiary, 1971, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306.

But here the government—perhaps also a victim of the inadvertent confusion—made no effort whatsoever to show the nature or source of the information that Secret Service Agent Wistrand relied upon or which led him to issue this pickup alert. Although the Court has wide latitude in determining whether under F.R.Crim.P. 41(e) a be-

lated motion to suppress can be entertained where it might likely interfere with the course of the trial, we do not believe the Judge rejected it on this basis. Rather, we think that probably out of inadvertent confusion on the part of the prosecutor and the Judge there was a feeling that, as an afterthought and a last ditch effort, counsel for Impson was trying to drag in probable cause when up to that time it was a search warrant issue only.

Nevertheless, whatever the origin of the error, the record demonstrates that the issue was squarely posed and there was no effort by the government to fill this critical void.

■ At the same time, however, this omission does not go to the validity of the conviction. Whether there is probable cause for the search is not a matter with which the jury is concerned or which could in any way influence its decision. The evidence either is, or is not, admissible and that is a determination in the first instance to be made by the

---

"MR. SPENCE: [counsel for defendant Annett]: I make no issue on the probable cause, but I do say that there was ample time for the authorities to have obtained a warrant for the search of the automobile or a warrant for the arrest of the individuals who were occupying the automobile.

"THE COURT: All right."

Annett's counsel relied primarily on the contention that there was adequate time, and hence a necessity, for obtaining a warrant. Subsequently, Annett pleaded guilty and was convicted.

In October, 1972, prior to Impson's first trial a suppression hearing was conducted in his behalf. The memorandum in support of Impson's original motion to suppress, while primarily focused on the necessity for a search warrant, did raise the probable cause issue. At the hearing on this motion on October 24, 1972, the trial judge accepted the parties' stipulation to use some 65 pages of testimony and colloquy from *Annett's* 1971 suppression hearing in order to conserve time. Of course, the stipulation did not agree to the truth of the testimony, only that the witnesses would so testify. On that record, the motion to suppress was denied. Impson's first trial ended with a deadlocked jury and mistrial on October 30, 1972.

On the morning of Impson's second trial, December 13, 1972, his new counsel submitted a new motion to suppress, this time stressing in great detail the probable cause issue.

The district court judge was concerned over the propriety of the motion for two reasons. First, the Government was unprepared to respond since the new motion was served just shortly before the proceedings began. More significantly, the trial judge was of the view that the stipulation for the use of the October, 1971, suppression hearing record included a waiver of the probable cause issue. On this the judge correctly recalled the statements made by Annett's counsel at the 1971 hearing which expressly waived the probable cause issue.

Thus, two facts are apparent: (i) Impson's attorney at the December 13, 1972 proceedings, did attempt to explain that the stipulation for the use of the 1971 proceedings did not include concessions made by Annett's counsel, and (ii) no actual evidentiary hearing, uninfected by the judge's erroneous attribution of the concession eliminating probable cause, was ever conducted to ascertain upon what facts Secret Service Agent Wistrand alerted the Wichita Falls authorities to pick up both Annett and Impson.

trial Judge. Consequently this is an appropriate place for the application of a Jackson v. Denno,[3] type of post-trial hearing[4] for the Court to determine whether there was probable cause, Turk v. United States, 8 Cir., 1970, 429 F.2d 1327, 1332, for the momentary detention of the gold Thunderbird and if so, whether in the light of that information and the corroboration very quickly obtained by the proven identity of the occupants and the presence of the Kentucky Fried Chicken container, there was probable cause for the balance of the search.

If there was, the conviction stands affirmed. If there was not, then the conviction must be set aside and a new trial had. To accomplish this we vacate the judgment of conviction and remand for consistent proceedings including a resentence, F.R.Crim.P. 32, if the search is found valid.

Vacated and remanded.

3. 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

4. See, e. g. the following cases in which the appellate court remanded the case for a post-trial hearing:

Smith v. State of Texas, 5 Cir., 1968, 395 F.2d 958; Black v. Beto, 5 Cir., 1967, 382 F.2d 758; Davis v. Beto, 5 Cir., 1970, 423 F.2d 633; Moreno v. Beto, 5 Cir., 1969, 415 F.2d 154; Hizel v. Sigler, 8 Cir., 1970, 430 F.2d 1398.