UNITED STATES of America,
Plaintiff-Appellee,

v.

James Bobby IMPSON,
Defendant-Appellant.

No. 74–1683.

United States Court of Appeals,
Fifth Circuit.

May 10, 1976.

Rehearing Denied July 14, 1976.

See 535 F.2d 286.

Melvyn Carson Bruder, Dallas, Tex., for defendant-appellant.

Frank D. McCown, U. S. Atty., John W. Sweeney, Jr., Asst. U. S. Atty., Ft. Worth, Tex., for plaintiff-appellee.

Before THORNBERRY, SIMPSON and MORGAN, Circuit Judges.

SIMPSON, Circuit Judge:

On December 15, 1972, James Bobby Impson was found guilty by a jury of possession of counterfeit federal reserve notes, in violation of Title 18, U.S.C., Section 472. Following judgment of conviction he was sentenced to ten years confinement.

Upon his direct appeal of that conviction, we remanded his case to the district court

for determinations of probable cause relating to his arrest and the attendant search of the car in which he was a passenger. *United States v. Impson*, 5 Cir. 1973, 482 F.2d 197. Impson sought certiorari from that decision contending that the Court of Appeals improperly remanded the case for a probable cause hearing and that the district court should have declared a mistrial because of prosecution testimony that Impson had made no statement to the police at the time of his arrest. The Supreme Court denied certiorari, 1973, 414 U.S. 1009, 94 S.Ct. 371, 39 L.Ed.2d 246. The district court, on our remand, found probable cause for both the arrest and the search of the automobile. We affirmed per curiam, *United States v. Impson*, 5 Cir., 506 F.2d 1055. Impson again petitioned for certiorari. The Supreme Court, having in the interim decided *United States v. Hale*, 1975, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99, vacated our judgment and remanded the case for our consideration in the light of *Hale*. *Impson v. United States*, 1975, 422 U.S. 1031, 95 S.Ct. 2647, 45 L.Ed.2d 688. Comparison with *Hale* constrains us now to reverse appellant's conviction and remand for a new trial by the district court.

Hale was arrested and found in possession of money corresponding in amount to currency recently stolen during a robbery. At trial, Hale testified that his estranged wife gave him the money after receiving her welfare check that day, to purchase a money order for her. The Court observed "In an effort to impeach Hale's explanation of his possession of the money, the prosecutor caused Hale to admit on cross-examination that he had not offered the exculpatory information to the police at the time of his arrest:

> 'Q. Did you in any way indicate [to the police] where the money came from?
> A. No, I didn't.
> Q. Why not?
> A. I didn't feel it was necessary at the time.'"

*United States v. Hale*, 1975, 422 U.S. at 174, 95 S.Ct. 2133, at 2135–2146, 45 L.Ed.2d 99, at 103–104. The Court reversed Hale's conviction because of the admission of this testimony. *Hale* was not decided on constitutional grounds, the Court relying instead upon a determination that "the probative value of respondent's pre-trial silence in this case was outweighed by the prejudicial impact of admitting it into evidence". 422 U.S. at 173, 95 S.Ct. at 2135, 45 L.Ed.2d at 103. It follows that there may be instances in which the probative value of the silence testified to might outweigh its prejudicial impact, cases in which the error might be harmless, and thus cases in which a conclusion contrary to that of *Hale* is permissible.[1] But we view the facts and rationale of *Hale* as so close to those here present as to preclude a different result from that the Supreme Court reached in *Hale*.

Since the facts of this case are fully reported at 482 F.2d 197, it is necessary for our purposes to relate only those facts bearing on the narrow issue of comment at trial on the defendant's silence at the time of his arrest. Impson was a passenger in a car which was stopped and searched—upon what has been determined to be probable cause—and in which counterfeit money was found. No counterfeit bills were found on Impson's person. At trial, the arresting officer, in response to government counsel's questions, testified as follows:

> "Q. All right. Did you make any statement to Mr. Impson at the time you got him out of the car?
> A. Did I make any statement?
> Q. Yes.
> A. I asked for identification; he showed it to me; I placed him under arrest.
> Q. Did you indicate what you were placing him under arrest for?
> A. Yes, sir.
> Q. And what was that?
> A. Suspicion of possession of counterfeit money.
> Q. All right. Did Mr. Impson make any statement to you at that time or say anything at that time?
> A. No, sir, he didn't.

---

1. Cf. *United States v. Griffin*, 5 Cir. 1976, 530 F.2d 101 [1976].

MR. BRUDER [defense counsel]: At this time we're going to object—excuse me.

MR. PARRETT [Assistant U. S. Attorney]: Pass the witness.

THE COURT: Let Mr. Juarez make an objection.

MR. JUAREZ [defense co-counsel]: Well, Your Honor, we object to that line of testimony on the basis that Mr. Impson wasn't advised of his right to remain silent at the time, and it infringes on his right to remain silent at the time of arrest.

THE COURT: Anything else?

MR. JUAREZ: No, Your Honor.

THE COURT: Well, I'm going to instruct the jury to disregard the last question and answer propounded by the Government; the answer of the witness; instruct them to disregard that."

(Record on appeal 341–342).

The next morning the trial court denied a defense motion for mistrial because of the police officer's testimony as to Impson's silence. Impson thereafter took the stand and gave exculpatory testimony as to the circumstances of his arrest and his presence in the car.

As in *Hale* the trial court here instructed the jury to disregard the testimony objected to, and also as in *Hale* the court refused to grant a mistrial. In *Hale* the Supreme Court did not discuss any rehabilitative or curative effects of the court's admonition to the jury, merely observing in a footnote the Court of Appeals' determination that the error was not cured by the trial court's instructions. 422 U.S. at 175, n.3, 95 S.Ct. at 2136, 45 L.Ed.2d at 104. The District of Columbia Circuit, in the decision reviewed had analyzed the possible impact of the inadmissible testimony on Hale's defense, concluding:

" . . . the improper question by the prosecutor leading to Hale's admission that he did not offer his alibi to the police was calculated to break a critical point in the defense since it was apparently intended to indicate that the alibi had been fabricated sometime between arrest and trial."

*United States v. Anderson*, 1974, 162 U.S. App.D.C. 305 at 312, 498 F.2d 1038, 1045, affirmed *sub nom. United States v. Hale,* supra.

In *Hale* the cross-examination revealing the defendant's post-arrest silence tended to impeach his prior testimony explaining that the money found on him (corresponding in amount to the money stolen in the robbery) had been given him by his estranged wife. In the present case appellant, following the testimony as to his silence elicited by the prosecutor, testified that he had merely gone "bar hopping" with the owner/driver of the car in which the counterfeit money was found, following an accident to his own vehicle. In each case, the point upon which a defense was being constructed, a refutation of guilty knowledge by the explaining away of each defendant's possession—actual in the case of Hale, constructive in the case of Impson—of the incriminating currency was arguably damaged or impeached by proof of the defendant's silence when arrested. The Court in *Anderson,* supra, cited *Stewart v. United States,* 1961, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84, as support for the proposition that a curative instruction might in Hale's situation merely have emphasized to the jury that Hale had chosen to exercise his Fifth Amendment rights to remain silent and thus have aggravated the harmful effect of the prosecution's error. The same reasoning is applicable here. Following it, we view the curative instructions to the *Impson* jury as of no controlling significance.

Government counsel suggests to us that *Hale* is distinguishable because the fact of his silence at arrest came out during his cross-examination, whereas here the government trial counsel elicited testimony of Impson's silence during the prosecution's case in chief. We perceive no logical basis for the proposed distinction.

The probative value of silence, as analyzed by Mr. Justice Marshall in *Hale,* 422 U.S. at 171–177, 95 S.Ct. at 2134–2137, 45

L.Ed.2d at 105–106, is ordinarily minimal. For the distinction urged upon us to be significant, either the prejudice to the defendant is necessarily greater in the cross-examination context, or the probative value of the silence is more substantial when testified to during the prosecution's case in chief. Arguably, the prejudice to the defendant when cross-examined as to his prior silence, might be greater inasmuch as the claimed inconsistency would be more dramatically emphasized to the jury. On the other hand, the probative value of the defendant's silence when related by the arresting officer during the prosecution's case in chief would seem to receive less emphasis than it might if it arose during cross-examination. In *Hale* the government urged the Supreme Court to find an inconsistency between the defendant's silence during post-arrest interrogation and his exculpatory testimony on the stand. The purpose was to analogize this situation to the use of statements taken from a defendant not properly advised of his *Miranda*[2] rights. Use of such statements, ordinarily inadmissible, was approved by the Court for impeachment purposes in *Harris v. New York*, 1971, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1.

But in this case proof of Impson's post-arrest silence was elicited when his explanation had not yet been brought forward as part of his defense. There was a danger of jury prejudice in advance against any explanation Impson might offer. Impson faced a dilemma. If he later stayed off the stand, an inference of guilt by the jury was the possible, perhaps probable consequence.

On the other hand, if he later gave a testimonial explanation, as he was entitled to do (and in fact did), the jury reaction might well be: "Why didn't he relate that to the police, if it is not simply an afterthought?" Doubt should not be cast upon his credibility as a penalty for exercising his prerogative to make no statement to the arresting officer.[3] Compared to the potential for prejudice inherent in such a situation, the actual probative value of proof of silence at arrest is slight. No valid distinction in the respect urged may be made between *Hale* and the present case.

Government counsel also points out that the silence in question in *Hale* was after the defendant had received *Miranda* warnings, while that of Impson occurred prior to any such warnings. Once more, we find the argument advanced unpersuasive. The contention is that practically *Miranda* warnings tend to inhibit speech and that silence after such warnings is less inconsistent with innocence than silence in the absence of such warnings. This argument conflicts with the whole purpose and policy of *Miranda* by rewarding the police for failure to inform an accused person promptly upon his arrest of his right to remain silent. Silence is the right of the innocent as well as of the guilty, *Helton v. United States*, Note 3, *supra*. In the face of the numerous legitimate reasons for an arrested person to elect to remain silent we decline to attempt an enumeration of instances in which silence by an arrested person may be of probative value to the government's case. We discern no merit in the appellee's argument that silence in the ab-

---

2. *Miranda v. Arizona*, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

3. "The constitutional protection against self-incrimination does not begin with a trial of a defendant on the charges against him. History tells us that it was the preliminary inquisition, prior to trial on the merits, which gave rise to the abuses, which resulted in the recognition of the privilege against self-incrimination. Under our law it is not the function of police officers to determine for the benefit of the jury whether or not a person under arrest on suspicion of crime has given a sufficient explanation, or any explanation at all, and the fact that the accused

here remained silent rather than risk unwitting distortion of his statement by a police officer at a later date does not give in law, and should not be allowed to give in fact, rise to an inference of guilt. 8 Wigmore on Evidence § 2272. It must be remembered that it is not the guilty alone who may exercise the privilege of remaining silent. An innocent person is entitled to the same protection when he deems his best interests will be served by electing that course. 8 Wigmore on Evidence § 2251."

*Helton v. United States*, 5 Cir. 1955, 221 F.2d 338, 341–342.

sence of *Miranda* warnings raises a greater inference of guilt than silence following such warnings.

■ The government argues finally that we should hold the error harmless beyond a reasonable doubt because the evidence against Impson was overwhelming. *Chapman v. California*, 1967, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711. This argument might prevail under different circumstances. We reject it here. Again, a comparison of Impson's situation with that of *Hale* is in order. In each trial the reference to the defendant's silence was brief, isolated, and promptly objected to by the defense. In each case a curative instruction was promptly given by the trial judge. In neither case was the fact of silence referred to during the closing jury argument. Hale's conviction was predicated upon three circumstances: (1) his possession of the stolen money; (2) somewhat shaky eyewitness identification of him by the robbery victim, and (3) his flight from the police. These indications of guilt are neither weak nor inconsequential, and neither the Court of Appeals nor the Supreme Court so labeled them. Hale's conviction was reversed because of the damage to his defense as to only one of these circumstances: his possession of the money. That phase of the proof only was capable of being met by Hale's testimonial explanation, and hence only that portion of the government's evidence was directly subject to taint by the cross-examination of Hale as to his prior silence. The implication the Court saw arising from the government's cross-examination of Hale as to his prior silence, that he had fabricated the story since his arrest, might well serve to strengthen the effect of other evidence upon the jury. The several evidentiary issues were in this sense bound together.

Applying these observations to the present case, we do not view the fact that several witnesses testified to purchasing counterfeit currency from Impson several months *after* his arrest for this offense, even when coupled with other circumstan-

tial evidence, as so overwhelming as to render harmless beyond a reasonable doubt the inadmissible evidence as to Impson's silence when arrested. The defense endeavored to discredit these witnesses before the jury or at least to mitigate the harmful effect of their testimony as to purchasing counterfeit currency from Impson by showing that they were largely convicted felons or others involved in counterfeiting operations, so that each of them stood to benefit by offering testimony favorable to the prosecution. In any event, their testimony was relevant only for the limited purpose of establishing motive. It was no aid to proving the essential element of the government's case: that Impson had knowledge of—and constructive possession of—the counterfeit currency found in the car. This was the only element of the prosecution's case open to refutation by Impson. His defense was that he did not know that the driver of the car, his friend, had the bogus bills in the automobile, and further that he, Impson, was in the car only because his own automobile had been wrecked earlier in the day. This explanation was not so implausible as to be dismissed out of hand. Indeed, from whatever cause, this or some other, Impson was convicted only at a retrial, after the jury could not agree at his first trial. While substantial, the government's evidence was not overwhelming.

The propriety of government counsel's eliciting testimony that a defendant was silent when arrested, without explaining his actions, has been condemned by this Court in a number of cases predating *Hale*. See, e. g., *Walker v. United States*, 5 Cir. 1968, 404 F.2d 900; *Ivey v. United States*, 5 Cir. 1965, 344 F.2d 770; *Helton v. United States*, Note 2, *supra*. It is fair to assume that the Assistant U. S. Attorney interviewed his witnesses in advance of trial and expected the answer given when he inquired as to any statement from Impson at his arrest. The logical conclusion is that his only purpose in putting the question was to bring before the jury the fact of the defendant's silence. The jury's attention was directed to this fact deliberately and not by inad-

vertence.[4] Comparing the circumstances here with the Court's holding in *Hale* we are unable to say that the error complained of was harmless beyond a reasonable doubt.

Here, as in *Hale*, Impson's silence during police interrogation lacked significant probative value and under these circumstances any reference to his silence carried with it an intolerably prejudicial impact. *Id.* 422 U.S. 171, at 179, 95 S.Ct. 2133, at 2138, 45 L.Ed.2d 99, at 107.

REVERSED and REMANDED for new trial.

---

4. This is not to suggest that inadvertent testimony relating the defendant's silence would necessarily be any less prejudicial. Perhaps the effect of such testimony would be less obvious to the jury, and thus less damaging, if testimony as to a defendant's silence at arrest came out unsolicited by the prosecutor, or in a context in which another more relevant fact was being sought from the witness.