Don Garriga CHAPMAN,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 75–3940.

United States Court of Appeals,
Fifth Circuit.

March 3, 1977.

Allen C. D. Scott, II, Jacksonville, Fla. (court appointed), for petitioner-appellant.

Stewart J. Carrouth, Asst. U. S. Atty., Nickolas Geeker, U. S. Atty., Clifford L. Davis, Asst. U. S. Atty., Tallahassee, Fla., for respondent-appellee.

Before GOLDBERG, SIMPSON and GEE, Circuit Judges.

GOLDBERG, Circuit Judge:

This appeal is from an order denying to Don Garriga Chapman post-conviction relief pursuant to 28 U.S.C. § 2255. Chapman is currently serving a ten year sentence for unlawfully attempting to enter a federal banking institution with intent to take money therefrom, in violation of 18 U.S.C. § 2113(a). This court affirmed Chapman's conviction on direct appeal. *United States v. Chapman,* 435 F.2d 1245 (5th Cir. 1970), *cert. denied,* 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971). For purposes of this collateral attack, Chapman argues that two constitutional errors fatally tainted his trial.

The first line of attack, which we rejected on direct appeal, is that the prosecution improperly elicited evidence of Chapman's post-arrest, post-*Miranda*-warning silence as part of its case in chief. The second line of attack is premised on the prosecution's cross-examining Chapman regarding two prior uncounselled felony convictions. Although we deflect without difficulty the second attack by invoking the harmless error rule,[1] the first requires us to assess the impact of recent Supreme Court and Fifth Circuit cases handed down after Chapman's 1970 conviction had become final. Ultimately we find that this challenge as well fails to meet the threshold requirement of the harmless error rule, and consequently we affirm.

## I. Facts

A police officer was directed to the Parkway National Bank. Upon his arrival, he

---

1. The prosecution alluded to six prior convictions in order to impeach Chapman on cross-examination. Chapman challenges only two of these as uncounselled. The district court correctly found that even if the prosecution's use of the challenged convictions was constitutionally impermissible under *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), evidence of the alleged uncounselled convictions was merely cumulative and any error in admitting such evidence must be considered harmless. This court has recently held that a conviction will not be set aside on a petition for habeas corpus even if prior counselless felony convictions were used for impeachment of the defendant, if the error is harmless beyond a reasonable doubt. *See Zilka v. Estelle,* 529 F.2d 388, 389 (5th Cir. 1976). *See also Thomas v. Savage,* 513 F.2d 536 (5th Cir. 1975), *cert. denied,* 424 U.S. 924, 96 S.Ct. 1135, 47 L.Ed.2d 333 (1976) (harmless error to admit invalid misdemeanor conviction before jury on issue of punishment); *Bates v. Nelson,* 485 F.2d 90, 95–96 (9th Cir. 1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1491, 39 L.Ed.2d 575 (1974); *Subilosky v. Moore,* 443 F.2d 334 (1st Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 328, 30 L.Ed.2d 276 (1971). We agree that in the circumstances of this case, any error in admitting the two challenged convictions was harmless beyond a reasonable doubt.

heard a scraping noise in the stairwell behind the bank. He then saw Chapman removing a crowbar from the door of the bank. Chapman crouched in the corner of the stairwell, concededly attempting to hide, but the officer arrested him.

The officer escorted the appellant from the stairwell. When they reached the top of the stairs, the officer read Chapman his *Miranda* rights. He searched Chapman, then led him to the officer's patrol car.

In the course of presenting its case at trial, the prosecution asked the arresting officer the following question:

"Did Mr. Chapman say anything else to you immediately after you arrested him as he was coming up out of the stairwell or during the time you were taking him to the car and after you put him in the car, did he say anything else to you?"

The defense objected. The prosecutor told the witness to answer yes or no. After the trial judge had excused the jury, government counsel explained: " . . . Now, the reason I asked him the question is I want to point out that he did not say anything, he did not give any explanation." The judge said he would allow the question. When the jury returned, the prosecutor repeated his question. The arresting officer answered, "no."

The defense subsequently called its only witness, the appellant. Chapman denied that he had been attempting to enter the bank. He claimed that two hitchhikers had borrowed his car, parked it near the bank, and, without his prior knowledge, used his crowbar in an attempt to enter the bank. When he learned that his companions had left the crowbar wedged in the bank's rear

door, Chapman averred, he immediately sought to retrieve the implement, knowing that it bore his fingerprints. Chapman claimed he was apprehended while trying to recover the crowbar.

The jury chose to disbelieve Chapman's account and found him guilty as charged. Chapman does not challenge the sufficiency of this evidence to support his conviction.

## II. The Use of Post-Arrest, Post-*Miranda*-Warning Silence

On direct appeal, this court held, *inter alia,* that the testimony regarding Chapman's silence was not prejudicial and did not infringe Chapman's fifth amendment rights. The court reasoned that the prosecutor asked a single question requiring merely a yes or no answer and that he received the answer without comment. *United States v. Chapman, supra,* 435 F.2d at 1247.[2]

A defendant is entitled to relitigate on a motion to vacate judgment an issue decided on direct appeal where there has been an intervening change in the law. *See Davis v. United States,* 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109, 116 (1974); *Kaufman v. United States,* 394 U.S. 217, 230, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969).[3] We shall consider whether an intervening change in the law that makes clear that the tactic employed against Chapman was a violation of due process enables his collateral attack to succeed where his direct appeal failed.

### A. Intervening Law

Had we Chapman's direct appeal before us today, there can be no doubt that we

---

2. Whether testimony as to the accused's silence is prejudicial must be considered in the factual context of each case. Here Chapman objects to a single question requiring merely a yes or no answer—to which the prosecutor offered no comment. Under these circumstances neither the question nor its answer infringed Chapman's fifth amendment rights. Cf. *United States v. Pridgen,* 5 Cir. 1970, 435 F.2d 152. Defense counsel's assertion that the question propounded at the trial necessitated an explanation of the accused's presence at the bank is without merit.

435 F.2d at 1247.

3. The petitioner's claim need not be of constitutional dimension in order to be cognizable under § 2255, but the claimed error of law must be "a fundamental defect which inherently results in a complete miscarriage of justice. . . ." *Davis v. United States, supra,* 417 U.S. at 346, 94 S.Ct. at 2305, quoting from *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

should find the reference to the appellant's post-arrest silence to constitute a violation of due process. Quite apart from whether any error was harmless the conclusion that error was committed follows *a fortiori* from our decision in *United States v. Impson,* 5th Cir., 531 F.2d 274, *rehearing denied,* 535 F.2d 286 (5th Cir. 1976), and the Supreme Court's decision in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

The *Impson* court relied on the balancing approach taken in *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975),[4] to conclude that admitting evidence of the defendant's post-arrest silence as part of the prosecution's case in chief was error because its great potential for prejudice outweighed the slight probative value of defendant's silence.[5] The court did not reach the question whether admission of such evidence as part of the prosecution's case in chief was a constitutional violation under *Miranda.*

In *Doyle,* the Supreme Court faced the question whether, although evidence of a criminal defendant's post-arrest, post-*Miranda*-warning silence could not be admitted for substantive purposes, it could be used for impeachment purposes. The Court held that the due process clause forbids the prosecution to use such evidence for purposes of impeaching an exculpatory story offered at trial. *See also United States v. Luna,* 539 F.2d 417 (5th Cir. 1976); *United States v. Harp,* 536 F.2d 601 (5th Cir. 1976). *Hale* and *Doyle* condemn what this court had allowed in a series of decisions subsequent to Chapman's trial but prior to *Hale. See e. g., United States v. Quintana-Gomez,* 488 F.2d 1246 (5th Cir. 1974); *United States v. Ramirez,* 441 F.2d 950 (5th Cir.), *cert. denied,* 404 U.S. 869, 92 S.Ct. 91, 30 L.Ed.2d 113 (1971).[6]

4. In *United States v. Hale,* the Supreme Court, exercising its supervisory power over the federal courts, held that when the prosecution cross-examined an accused regarding his silence in the face of arrest, thereby impeaching his exculpatory story offered for the first time at trial, the probative value of the defendant's pre-trial silence was outweighed by the prejudicial impact of admitting it into evidence. 422 U.S. at 173, 95 S.Ct. at 2135, 45 L.Ed.2d at 103. Justice White's concurring opinion expressed the view that the Court's decision should rest on a constitutional basis, a view subsequently adopted by the Court in *Doyle.*

5. In *Impson,* the defendant was the passenger of a car in which counterfeit money was discovered. At trial he offered a plausible exculpatory story. As part of the government's case in chief, the arresting officer testified that the defendant had made no statement upon his arrest. Despite the facts that no *Miranda* warning had been given and that the judge expressly ordered the jury to disregard the reference to defendant's post-arrest silence, this court held that "any reference to [defendant's] silence lacked significant probative value and carried with it an intolerably prejudicial impact." 531 F.2d at 279.

The *Impson* court took note of decisions holding that statements from defendants not properly advised of their *Miranda* rights are admissible for impeachment purposes. *See, e. g., Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In *Impson,* however,

information about the defendant's post-arrest silence had been elicited before the defendant offered his exculpatory explanation. This presented Impson with a dilemma: if he did not take the stand, an inference of guilt by the jury was a possible consequence; if he did take the stand, his credibility would already be in question and the jury might simply discount as fabricated a story the defendant neglected to tell the police on the scene.

The court's reasoning in *Impson* applies with equal force to Chapman's claim. Evidence of Chapman's silence placed him in precisely the dilemma feared by the *Impson* court. Moreover, aggravating circumstances not present in *Impson* obtained at Chapman's trial. Not only had Chapman, unlike Impson, been given a *Miranda* warning before the silence at issue, but in the case at bar, unlike *Impson,* the judge offered no curative instruction regarding the evidence of Chapman's silence.

6. *Cf. United States v. Griffin,* 530 F.2d 101 (5th Cir. 1976) *(defendant's silence admissible to rebut impression that prosecution had been informed of his defense prior to trial but had failed to reveal results of investigation to defendant); United States v. Fairchild,* 505 F.2d 1378 (5th Cir. 1975) (defendant's silence admissible to rebut impression that he actively cooperated with police). These decisions clearly survive *Doyle.*

### B. Applicable Law

*Doyle* did not spring full-blown from the Court's collective brow, but rather traces its impressive lineage to fundamental principles of our jurisprudence. In *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966), the Supreme Court announced in dictum that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." Although that admonition refers primarily to the prosecution's affirmative use of the defendant's prior silence rather than its use for impeachment purposes, even before *Doyle* some courts, though not the Fifth Circuit, had construed *Miranda* to prohibit its use for the latter purpose as well. *See United States v. Anderson*, 162 U.S.App.D.C. 305, 498 F.2d 1038 (1974); *Johnson v. Patterson*, 475 F.2d 1066 (10th Cir.), *cert. denied*, 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973). *United States v. Brinson*, 411 F.2d 1057 (6th Cir. 1969).[7] *But see Sharp v. United States*, 410 F.2d 969, 972 (5th Cir. 1969) (Brown, C. J., dissenting).

■ Regardless of whether such impeachment evidence was prohibited under the law applicable at the time of Chapman's trial, however, the trial court arguably should not have allowed this substantive use of the defendant's silence.

Throughout the briefs and oral argument of this case, the parties have assumed that only *Hale* and *Doyle* could show a violation. But unlike those cases, in the case at bar the prosecution arguably did not use Chapman's silence to impeach but to support an inference of guilt. When the prosecutor elicited testimony regarding Chapman's post-arrest silence, Chapman had not yet offered his exculpatory story. Impeachment evidence is ordinarily elicited on cross-examination or rebuttal. The timing of the prosecutor's questions make clear that this was substantive, not impeachment testimony. Indeed, when the prosecutor defended the propriety of a question he knew would result in evidence of Chapman's silence, he said nothing about impeachment; he said only that he wanted to show that Chapman did not give an explanation. This suggests that the prosecutor intended to bring before the jury the fact of Chapman's silence as a tacit admission—a tactic this court properly condemned long before *Hale*. *See, e. g., Walker v. United States*, 404 F.2d 900 (5th Cir. 1968). The failure to give a limiting instruction should prevent the subsequently acquired impeachment value of defendant's silence from saving the impropriety.[8]

The prohibition against the use of a defendant's silence as a means of implying his guilt obtained at the time of Chapman's trial. We have recognized that "*Miranda* establishes that the prosecution may not use as part of its case in chief a criminal defendant's silence following his arrest and

---

7. It has been said of the prohibition against using silence to infer guilt that were the rule otherwise, a warning would be required to say, "If you say anything, it will be used against you; if you do not say anything, that will be used against you." *United States v. Brinson, supra*, 411 F.2d at 1060, *quoting McCarthy v. United States*, 25 F.2d 298 (6th Cir. 1928). That is scarcely less true of the prohibition against using silence to impeach an exculpatory story.

8. Even if the evidence later proved to have value as impeachment evidence, its admissibility was not thereby assured under the law applicable at the time of Chapman's trial. In *Baker v. United States*, 357 F.2d 11 (5th Cir. 1966), this court held, *inter alia*, that it was reversible error to allow an FBI agent to testify that when

defendant was first questioned he asked for a lawyer and was thereafter silent. Although the defendant's later testimony in that case seemed implausible to the trial court, and his silence might therefore further have impeached defendant's credibility, we said: "To have proven that appellant requested the right of counsel and thereafter made no further statement was, we feel, as objectionable as it would have been to comment on a defendant exercising his constitutional right not to take the witness stand." 357 F.2d at 14. *But see Sharp v. United States*, 410 F.2d 969 (5th Cir. 1969); *United States v. Pledger*, 409 F.2d 1335 (5th Cir. 1969). These cases held it was not error to allow cross-examination of a defendant regarding his failure to offer an exculpatory story at time of arrest.

warning." *United States v. Fairchild, supra*, 505 F.2d at 1383.

Chapman squarely raised and this court squarely rejected this claim on direct appeal, however, and we are bound by the law of the case. The present difficulty is understanding precisely the nature of our earlier ruling and determining whether the intervening law would change the result.

On direct appeal, we considered whether the reference to Chapman's silence was "prejudicial." We apparently concluded that because the reference was not "prejudicial," it did not infringe Chapman's "fifth amendment rights." *See* note 2, *supra*. It is not clear whether we were analyzing the problem as a *Miranda* violation and concluding that it was harmless beyond a reasonable doubt, or weighing the prejudicial impact of the reference as an evidentiary matter. If our intention was the former, then assuming the harmless error doctrine is applicable to *Doyle* the retroactive application of that case could not change the result. We could but echo our earlier ruling of harmless constitutional error.

On the other hand, assuming that we found no constitutional violation at all, this could only have been because we neglected to apply *Miranda* or thought the prosecutor's use of defendant's silence as part of the case in chief was permissible under *Miranda*, perhaps because we supposed the prosecutor was using it solely for impeachment purposes.[9] In either case, it follows that we have never decided whether the prosecution's use of Chapman's silence was harmless beyond a reasonable doubt. Applying the intervening law of *Doyle* would force this question upon us.

To be sure, it remains true, assuming we thought the prosecutor's conduct permissible under *Miranda*, that we have once rejected Chapman's claim that the prosecu-

tor's use of Chapman's silence on direct testimony was unconstitutional. Therefore, it might be said, because it has always been understood that such conduct was prohibited under *Miranda* and because *Doyle* addresses only the use of a defendant's silence for impeachment purposes, *Doyle* adds nothing to the law that obtained at the time of Chapman's trial as it applied to Chapman. We reject this argument.

First, it is not clear whether the court thought the reference to Chapman's silence was justified by its impeachment value. If it did, then clearly *Doyle* applies. But second, even if the court thought the reference was used solely for substantive purposes, *Doyle* would still have had an important message for the court. It must be recognized that the Supreme Court emphatically prohibited the use of a defendant's post-arrest silence for impeachment purposes despite the value placed on cross-examination as a means, often the only means, of rebutting an exculpatory story. *See Doyle v. Ohio, supra*, 426 U.S. at 634–636, 96 S.Ct. at 2252–53 (Stevens, J., dissenting). This makes it abundantly clear that when the value of cross-examination is not a factor, as when the prosecutor uses defendant's silence in its case in chief, the Court would not hesitate to find this use of a defendant's "insolubly ambiguous" silence a violation of constitutional dimension. *See United States v. Stevens*, 538 F.2d 1203, 1205–6 (5th Cir. 1976). Therefore we think that in either case, had *Doyle*'s clarification and reaffirmation of this principle been available to the panel that heard Chapman's direct appeal, the court would have found a constitutional violation.

At least as regards the impact of *Doyle* on a prior holding founded on an impeachment justification for admitting evidence of Chapman's silence, we must confront the

---

**9.** This court's citation of *United States v. Pridgen*, 435 F.2d 152 (5th Cir. 1970), as indirect authority for our holding on Chapman's direct appeal suggests that we may not have thought *Miranda* applicable at all. In *Pridgen* the court said that general questions asked of a person *prior* to his arrest and *Miranda* warning, which elicited an affirmative explanation, fell under the exception to *Miranda* covering "general on-the-scene questioning." Alternatively we held that such pre-custody activity was harmless error because the defendant subsequently confessed to the crime. It is certainly difficult to see how this case could have applied to Chapman's case, since the prosecutor asked if Chapman had said anything *after* his arrest.

question of *Doyle*'s retroactivity. Even if the court reached its decision without an impeachment justification but applied the law regarding substantive uses of a defendant's silence, however, it would seem difficult to circumvent the question of retroactivity. For it would be troublesome indeed to allow Chapman to assert that *Doyle* effected an intervening change in the law for purposes of deciding whether our decision on direct appeal may be collaterally attacked, but to deny that *Doyle* constituted a "new rule" for purposes of posing the question of its retroactive application. We can consider Chapman's collateral attack only if we assume there was an intervening change in the law, and this requires that we consider the matter of retroactivity.

We shall in any event treat our ruling on Chapman's direct appeal as though it rested on the assumption that the reference to Chapman's silence was saved from constitutional error by its value as impeachment evidence—the assumption *Doyle* directly contravenes.

## C. Retroactivity of *Hale* and *Doyle*

We first faced the question of the retroactivity of *Hale* in our reconsideration of *United States v. Impson, supra,* 535 F.2d

286. We said that because the Supreme Court had vacated a previous panel decision in light of *Hale,* we specifically declined to deny retroactive application of *Hale* to *Impson's* case. *See United States v. Impson,* 506 F.2d 1055 (5th Cir.) (per curiam), *vacated and remanded,* 422 U.S. 1031, 95 S.Ct. 2647, 45 L.Ed.2d 688 (1975), *on remand,* 531 F.2d 274 (5th Cir. 1976), *rehearing denied,* 535 F.2d 286 (5th Cir. 1976). Under similar circumstances this court subsequently applied *Doyle* itself retroactively to a case on direct appeal. *See United States v. Harp,* 513 F.2d 786 (5th Cir. 1975), *vacated and remanded,* 423 U.S. 919, 96 S.Ct. 258, 46 L.Ed.2d 246, *on remand,* 536 F.2d 601 (5th Cir. 1976) (per curiam).

Even so, *Impson* and *Harp* establish only that *Hale* and *Doyle* apply retrospectively to cases on direct review, and it might be argued that the latter cases do not apply retroactively to a conviction under collateral attack. Generally speaking, however, the Court has declined to adopt for purposes of determining the retroactivity of new rules of criminal procedure the distinction between cases on direct review and those arising on collateral attack. *See Williams v. United States,* 401 U.S. 646, 651–52, 91 S.Ct. 1148, 1151–1152, 28 L.Ed.2d 388 (1971) (plurality opinion).[10]  *But see Bradley v.*

---

10. The Court has held that certain new rules are to be retroactive only with respect to all cases then subject to direct review. *See Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) [non-retroactivity of *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1964)]; *Tehan v. United States ex rel. Shott,* 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966) (non-retroactivity of *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106); *O'Connor v. Ohio,* 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189 (1966) (where petitioner's conviction was not final on date of *Griffin,* prospectivity of *Griffin* did not preclude its application). These holdings are anomalous, however. All new constitutional requirements were presumed fully retroactive until *Linkletter,* which was the Court's first assertion of its power to limit constitutional doctrine to prospective application. Thus, *Linkletter* and *Tehan* established a non-retroactivity limited to convictions that had become final by the time of *Mapp* and *Griffin,* respectively, simply because decisions prior to *Linkletter* and *Tehan* had already established without discussion that *Mapp* and *Griffin* applied to cases on direct appeal on the date of the latter decision. *See*

*Johnson v. New Jersey,* 384 U.S. 719, 732, 86 S.Ct. 1772, 1780, 16 L.Ed.2d 882 (1966).

After *Linkletter* and *Tehan,* the Court moved the relevant date of application of prospective rules first to the date of trial, in *Johnson v. New Jersey, supra,* [rules of *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and *Miranda* were non-retroactive and applied only in trials begun after the date of each decision] and finally to the date of the regulated conduct itself, in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) [identification procedure of *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), applied only to confrontations after the date of the decisions]. *See also Jenkins v. Delaware,* 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969) (*Miranda* standards do not apply to retrial of defendant whose first trial began prior to date of *Miranda* decision). Justice Harlan, who argued unsuccessfully for a distinction between cases on direct review and those under collateral attack, offered many a withering dissent. For example, see Justice

*School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *United States v. Fitzgerald,* 545 F.2d 578 (7th Cir. 1976), *reh. denied* (1976) (when a lower court relies on a principle or decision that is changed prior to direct review by the Supreme Court, an appellant court must apply the current law rather than the law applied by the lower court).

Moreover, in *Meeks v. Havener,* 516 F.2d 902 (6th Cir. 1975) (per curiam), *vacated and remanded,* 428 U.S. 908, 96 S.Ct. 3215, 49 L.Ed.2d 1213 (1976), *on remand,* 545 F.2d 9 (6th Cir. 1976) (per curiam) [20 Cr.L.Rep. 2237, December 15, 1976], the Supreme Court vacated a denial of habeas relief in light of *Doyle,* and the Sixth Circuit found a violation of due process, albeit a harmless error. To be sure, it would be improper to conclude merely from the Supreme Court's remanding in light of *Doyle* that it intended *Doyle* to be fully retroactive.[11] Nevertheless, the Sixth Circuit decision in *Meeks* represents a fully retroactive application of *Doyle.* Neither *Meeks* nor any of this circuit's decisions, however, have explicitly considered the merits of according retroactive application to *Doyle* or *Hale* in

light of the criteria established by the Supreme Court.[12]

We need not decide whether decisions applying *Doyle* and *Hale* retroactively to cases on direct appeal imply that *Doyle* and *Hale* should be retroactively applied to a conviction under collateral attack, or if not, whether the Supreme Court's test for determining retroactivity independently compels a conclusion of retroactivity here. Assuming *Doyle* and *Hale* are fully applicable to the case at bar, we think Chapman's collateral attack fails because any violation of due process was harmless beyond a reasonable doubt.

### D. Harmless Error

In *Doyle* itself, the Supreme Court held it would reverse because the prosecution's use of defendant's silence for impeachment purposes constituted a due process violation and because the state had failed to argue that the violation was harmless error. 426 U.S. at 618–619, 96 S.Ct. at 2245. This allusion to harmless error is not authority for applying that doctrine, but rather expressly reserves the issue. Nonetheless, we

---

Harlan's dissent from *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) [rule of *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), extending fourth amendment protection to nontrespassory surveillance would apply only to surveillance conducted subsequent to *Katz* ].

11. After all, the Court might have remanded so that the Sixth Circuit could consider precisely the question of retroactivity. For example, in *United States v. Miller,* 492 F.2d 37 (5th Cir. 1974), *cert. denied,* 422 U.S. 1056, 95 S.Ct. 2679, 45 L.Ed.2d 708 (1975), this court said that although the Supreme Court had vacated and remanded the previous panel decision in light of *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the Court's action on *certiorari* did not establish that the 1973 decision was retroactively applicable. The court's holding that *Almeida-Sanchez* was to be only prospectively applied was subsequently vindicated. *See Bowen v. United States,* 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975); *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975).

12. The Supreme Court's test for whether a "new rule" in the area of criminal procedure is to be retroactively applied calls for the consid-

eration of three criteria: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Stovall v. Denno, supra,* 388 U.S. at 297, 87 S.Ct. at 1970. *See also Linkletter v. Walker, supra,* 381 U.S. at 629, 636, 85 S.Ct. at 1737, 1741. The most important of these criteria is the first, and where the purpose of the new rule is to enhance the reliability of the truth-finding process at trial, that has sometimes been a sufficient condition for inferring retroactivity. *See, e. g., Blackburn v. Cross,* 510 F.2d 1014 (5th Cir. 1975). But this emphasis on truth-finding has not been entirely consistent. *Compare Roberts v. Russell,* 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) (*Bruton* rule is retroactive because admission of codefendant's confession implicating defendant may impair reliability of determination of guilt or innocence) *with Tehan v. United States ex rel. Shott, supra,* 382 U.S. 406, 86 S.Ct. 459. (*Griffin v. California* is not retroactive even though comment on defendant's failure to testify may mislead jury regarding his reasons for declining to take stand).

decide today to apply the doctrine to Chapman's case.

■ In *Meeks v. Havener, supra,* 545 F.2d at 10, the Sixth Circuit relied on the doctrine of harmless error to deny relief to a habeas petitioner at whose trial the prosecution had committed a *Doyle* violation. In two decisions of this court, we have found it appropriate to reject claims of harmless error not because the doctrine was thought inapplicable to a *Hale* or *Doyle* case, but because, as the panels took care to show, the particular errors were not in fact harmless. *See United States v. Impson, supra,* 531 F.2d at 278 (*Hale*); *United States v. Harp, supra,* 536 F.2d at 603 (*Doyle*).[13] We agree with the Sixth Circuit that the harmless error doctrine is applicable to the kind of constitutional violation at issue in *Doyle. See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

The next question is whether the constitutional violation in the case at bar was harmless beyond a reasonable doubt. We find transparently frivolous Chapman's wholly uncorroborated story that he had loaned his car to two hitchhikers whom he had just met, that upon hearing that they had left his car at the bank and his crowbar in the bank's rear door he went not to the police but to retrieve the crowbar, and that when discovered by a police officer holding on to a crowbar wedged into the rear door of the bank he was merely in the process of extricating the crowbar from the door. Chapman adduced absolutely no evidence that might have lent some plausibility to the story.

On the other hand, we have held that where the prosecution used the defendant's post-arrest silence to defeat even a transparently frivolous exculpatory story, reversible error resulted. In *United States v. Harp, supra,* the defendants had been discovered in "an obvious escape attempt," concealed in a boxcar about to leave the penitentiary and armed with various tools, clothing, and two "authentic looking handguns made of wood." At trial for attempted escape, two of the accused presented a "transparently frivolous duress defense," claiming that they had been kidnapped by a codefendant. 536 F.2d at 602.[14] The court said that in light of *Doyle,* the prosecution's emphasis during closing argument on the defendants' post-arrest silence violated due process. The court added that "[b]ecause the prosecutor's comments struck at the jugular of [the defendants' exculpatory] story, these remarks cannot be classified as harmless." *Id.* at 603.

The facts of *Harp* made it evident that whatever remote plausibility the duress defense might have had was destroyed by the prosecutor's closing argument. He repeatedly and explicitly contrasted the unlikely story with defendant's failure to say anything about that story upon their arrest.[15] That is what the court meant in

---

**13.** In *Impson* we noted specifically that the harmless error argument might prevail under different factual circumstances to a case in which the prosecution used defendant's silence for impeachment purposes. 531 F.2d at 278.

**14.** The alleged kidnapper was the appellant, Don Garriga Chapman, who corroborated the kidnapping explanation while asserting temporary insanity as his defense. Federal authorities have never accused Chapman of a lack of imagination, whatever his other offenses. Whether or not Chapman was the author of this story, it can scarcely be doubted that like all great artists, Chapman's talent for invention enabled his compatriots to escape the mundane, if not the penitentiary.

**15.** Shortly after saying that if the jury believed the duress defense then its "feeling about Santa Clause and Easter Bunny and the Good Fairy and all of that . . . [would be] equally acceptable," the prosecutor stated:

> Now doesn't it make sense that if the facts had been like the defendants said they had been, that they would have told somebody?
>
> "Warden Henderson, I had no part in this. I was forced and compelled in a boxcar by Mr. Chapman," and don't you know right down the list that they would have gotten together and said, "Warden, we didn't have anything to do with that; Mr. Henry, FBI man, I had nothing to do with that. Don't prosecute me for this. I was frightened slap to death by this man Chapman."
>
> Did that happen? No, that didn't happen. Don't you know that anywhere along the line, these people could have gotten somebody at the prison and said, "Look, don't prosecute me for this, I was forced up on the boxcar."

536 F.2d at 602, n. 2.

writing that the prosecutor's comments "struck at the jugular" of the defendants' story.

By contrast, in the case at bar the prosecutor asked one question eliciting the fact of Chapman's silence, and that fact was never alluded to again. Neither the prosecutor nor any prosecution witness tied together the fact of Chapman's silence with his improbable story. The jury was never told that silence could be used for impeachment purposes. Neither in cross-examination nor in argument did the prosecutor suggest that silence impeached Chapman's trial testimony. *Cf. Mercado v. Massey,* 536 F.2d 107 (5th Cir. 1976) (prosecutor's remark adverting to defendant's silence not construed as suggestion that silence could be used for impeachment purposes).

On the other hand, we have held that even a single reference on direct examination to defendant's silence carried an intolerably prejudicial impact, where the defendant's exculpatory story was not totally implausible and the government's inculpatory evidence was not overwhelming. *United States v. Impson, supra,* 532 F.2d at 278–79. Although *Impson* did not reach the constitutional ground of decision, after *Doyle* the conduct condemned in *Impson* clearly constitutes a due process violation. Under the facts of *Impson,* moreover, we would not require more than a single reference on direct examination to defendant's silence, such as transpired in the case at bar, in order to reverse on due process grounds. *See also United States v. Hale, supra,* 422 U.S. at 174, 95 S.Ct. at 2133.

The exculpatory story offered in *Impson* was, however, far more plausible and the indicia of guilt far weaker than in the case at bar. Impson was a passenger of a car that was stopped and searched. The police found counterfeit money in the car but no counterfeit bills on Impson's person. Impson was charged with possessing counterfeit bills; accordingly, the prosecution was obliged to show that Impson knew and had constructive possession of the currency.

Impson claimed in defense that he did not know that the driver of the car had such currency in the automobile and that he was in the car only because his own automobile had been wrecked earlier that day. The jury could not agree regarding guilt or innocence at Impson's first trial, possibly because of the plausibility of the story, and Impson was convicted only after a retrial. In short, the story was not totally implausible and the evidence of guilt less than overwhelming. We properly rejected the government's invitation to apply the harmless error doctrine.

In the case at bar, however, Chapman was discovered tugging at a crowbar lodged in the rear door of a bank. Evidence of his guilt was so strong and his exculpatory story so implausible and totally lacking in evidentiary support that we cannot say there is a reasonable possibility that the single reference to his silence contributed to his conviction. In short, we hold that it was harmless beyond a reasonable doubt. *See Chapman v. California, supra,* 386 U.S. at 24, 87 S.Ct. at 828.

The results in these cases are easily harmonized. When the prosecution uses defendant's post-arrest silence to impeach an exculpatory story offered by defendant at trial and the prosecution directly links the implausibility of the exculpatory story to the defendant's ostensibly inconsistent act of remaining silent, reversible error results even if the story is transparently frivolous. *See United States v. Luna,* 539 F.2d 417 (5th Cir. 1976); *United States v. Harp, supra.*

When the prosecutor does not directly tie the fact of defendant's silence to his exculpatory story, *i. e.,* when the prosecutor elicits that fact on direct examination and refrains from commenting on it or adverting to it again, and the jury is never told that such silence can be used for impeachment purposes, reversible error results if the exculpatory story is not totally implausible or the indicia of guilt not overwhelming. *See United States v. Impson, supra.*[16]

---

16. In *United States v. Stevens, supra,* 538 F.2d at 1205–06, we held that in light of two ambig-

uous comments regarding a defendant's post-arrest, post-*Miranda*-warning silence elicited

When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error. Chapman's fate is to instantiate this third rule.

■ The infusion of "harmlessness" into error must be the exception, and the doctrine must be sparingly employed. A miniscule error must coalesce with gargantuan guilt, even where the accused displays an imagination of Pantagruelian dimensions.

The judgment of the district court is AFFIRMED.

as part of the prosecution's case in chief, the trial court's failure to grant a mistrial was reversible error under *Doyle.* In that case, which arose on direct appeal, the prosecutor's line of questioning was designed to emphasize through repetition the fact of defendant's silence. In any event, the court did not discuss whether its decision to reverse because of the due process violation survived application of the harmless error doctrine. *Cf. United States v. Davis,* 546 F.2d 617 (5th Cir. 1977) (questions regarding defendant's failure to explain innocence not reversible error under *Doyle* because concerned pre-arrest conduct); *United States v. Joyner,* 539 F.2d 1162 (8th Cir. 1976) (defendant's refusal to tell FBI agents where allegedly unlawfully converted trucks were located, adverted to at trial during prosecution's case in chief, was not sufficient assertion of his right to remain silent under *Miranda* or *Doyle* ).