UNITED STATES of America,
Plaintiff-Appellee,

v.

Marcus Aaron DIXON,
Defendant-Appellant.

No. 78–5492.

United States Court of Appeals,
Fifth Circuit.

April 20, 1979.

Rehearing and Rehearing En Banc
Denied May 24, 1979.

---

C. S. Williams, Jr., Federal Public Defender, Pensacola, Fla., for defendant-appellant.

Nickolas P. Geeker, U. S. Atty., Pensacola, Fla., Donald S. Modesitt, Tallahassee, Fla., for plaintiff-appellee.

Before MORGAN, FAY and RUBIN, Circuit Judges.

FAY, Circuit Judge:

Appellant was tried before a jury and convicted on one count of a two-count indictment charging violation of the Hobbs Act, 18 U.S.C. § 1951 (1976). In his brief, appellant urges error in two instances. First, appellant urges that the trial court erred in refusing to declare a mistrial after a government witness made reference to appellant's exercise of his constitutional right to remain silent. Second, appellant urges that the trial court delivered an improper *Allen* charge. At oral argument, counsel for appellant raised the issue of sufficiency of the evidence. For reasons more fully developed below, we affirm.

## FACTS

Two series of extortionate phone calls were received by the St. Andrews Bay Railway Company. In each series, an anonymous caller threatened harm to the railroad and its employees unless the caller was paid a sum of money.

The first extortion attempt occurred on February 15th and 16th, 1976. At the direction of the Federal Bureau of Investigation, a satchel containing paper was left at a location in response to directions given by the extortionist. The agents failed to apprehend the person who made the threatening calls.

The second series of calls began about one year later. Once again, the FBI was called in to investigate. Each phone call was recorded and traced. Harold Hightow-

er, a switching equipment technician with the telephone company, was assigned to assist the agents in tracing the phone calls. On March 15, 1978, a threatening phone call was received by the railroad. The tracing equipment did not work and Hightower was apparently forced to listen in on the phone conversation. Quite fortuitously, Hightower recognized the voices of both parties to the call. He immediately notified his supervisor that the anonymous caller was defendant, Marcus Dixon.

Armed with this information, the FBI began a surveillance of the area around the defendant's home. Subsequent phone calls by the extortionist provided directions to the railroad as to where the demanded money was to be "dropped." Following those instructions, special agent Boe proceeded to Holmes Creek near New Hope, Florida, and with the assistance of other officers placed a brief case containing paper and an electronic beeper into a boat. The beeper apparently malfunctioned. The next morning the boat was located a few hundred yards up the creek from where the "drop" took place. The briefcase was gone. The boat was identified as the one in which the briefcase had been left by the agents. A close examination of the boat led the agents to the conclusion that it had recently been placed in the trunk of an automobile. Orange paint had been scraped from the sides of the boat and a gray water-sealing type of material was observed to have scrape marks as though it had been placed in the trunk of an automobile. Various paint samples were removed from the boat. The agents came to the conclusion that if Hightower's voice identifications of Mark Dixon were correct and that if the extortionist had recently transported the boat in the trunk of a car, then the defendant's automobile should contain particles of gray sealant, orange paint and aluminum scrapings.

A search warrant was obtained and the defendant's vehicle was searched. Gray sealant, orange paint and aluminum scrapings were found in the trunk of the car that matched samples taken from the boat.

During the serving of the search warrant and the arrest of the defendant, a piece of rope was located in the yard of the defendant. The agent seized the rope because it appeared to match a short piece of rope located in the front of the aluminum boat. Subsequent examination showed that the rope in the yard had been cut from the rope on the boat.

Defendant was indicted on two counts of violating the Hobbs Act, tried, convicted on one count of violating the Hobbs Act, and sentenced to ten years imprisonment. At trial, he took the stand and offered an exculpatory story. Defendant also testified that he had spoken with agent Boe on four or five occasions. Boe was called on rebuttal and when asked whether Dixon had ever told him the story which Dixon told on the stand, Boe replied, "No, sir, he declined to discuss the matter." Defendant immediately moved for a mistrial. His motion was denied. Appellant urges that this denial was improper as Boe's statement constituted an impermissible reference to an accused's exercise of his right to remain silent.

### THE ISSUES AND THE LAW

It is now well settled that prosecutorial comment on silence for substantive or impeachment value is constitutionally prohibited. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Miranda v. Arizona,* 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although the Supreme Court has not ruled on this point, the Fifth Circuit has decided that the harmless error doctrine is applicable to the constitutional violation of comment on silence for impeachment. *United States v. Meneses-Davila,* 580 F.2d 888, 890 (5th Cir. 1978); *Chapman v. United States,* 547 F.2d 1240, 1248 (5th Cir.), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977). We will assume for purposes of this analysis that Boe's response constituted a *Doyle* viola-

tion.[1]  Therefore, the first issue we address on this appeal is whether the government's *Doyle* violation is harmless.  We note that such a determination must be made on a "case by case basis."  *United States v. Davis,* 546 F.2d 583, 594–95 & n. 31 (5th Cir.) *cert. denied,* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977).  "The decision requires an examination of the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt."  *United States v. Meneses-Davila,* 580 F.2d 888, 890 (5th Cir. 1978).

A panel of this Court recently tried to harmonize our cases concerning *Doyle* violations and the harmless error test.  That panel concluded that our cases fall into three categories:

■ When the prosecution uses defendant's post-arrest silence to impeach an exculpatory story offered by defendant at trial and the prosecution directly links the implausibility of the exculpatory story to the defendant's ostensibly inconsistent act of remaining silent, reversible error results even if the story is transparently frivolous.

■ When the prosecutor does not directly tie the fact of defendant's silence to his exculpatory story, i. e., when the prosecutor elicits that fact on direct examination and refrains from commenting on it or adverting to it again, and the jury is never told that such silence can be used for impeachment purposes, reversible error results if the exculpatory story is not totally implausible or the indicia of guilt not overwhelming.

■ When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to

defendant's silence constitutes harmless error.

*Chapman v. United States,* 547 F.2d 1240, 1249–50 (5th Cir.), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977) (citations and footnote omitted).

■ Neither party to this appeal asserts that this is a type-I case.  Rather, not surprisingly, defendant asserts that this is a type-II case while the government argues for type-III classification.  Unable to agree with either party, we find that the case lies somewhere between the two in that defendant's exculpatory story told at trial is not "totally implausible"; yet the indicia of his guilt are substantial.

Having received little help from the *Chapman* three-type analysis, we seek refuge in the case-by-case rule of *Davis* and conclude that the error in this case was, under the circumstances of this case, harmless and defendant's motion for mistrial was properly denied.  Several factors lead us to this conclusion.  First, we do not believe that Agent Boe's statement caused any prejudice to the defendant in the minds of the jury.  The statement that Dixon declined to discuss the matter with Boe is innocuous in the context of the question presented.  Had Boe answered "no" to government's counsel's question (this clearly presenting no constitutional problem), the inference of recent fabrication of the exculpatory story would have been stronger than the statement that Dixon declined to discuss the matter.  Moreover, while one could argue that the reference is a comment on Dixon's exercise of his constitutional right, another inference, more or merely equally plausible, is that defendant simply did not want to discuss the matter.[2]

Second, any slight prejudice which may have resulted was cured by the trial courts curative instructions to the jury.  This court has embraced the propriety of cau-

---

1.  We have reviewed the record in its entirety.  It is always difficult to get the flavor of trial proceedings from a cold transcript.  While we have serious doubts that this is a *Doyle* violation, *see* factor four of our analysis, we conduct our analysis as if this statement constituted a *Doyle* violation, thus resolving this issue in favor of the appellant.

2.  There was no testimony before the jury related to the giving of *Miranda* warnings or advice.

tionary instructions in *Doyle* type situations. *See United States v. Fairchild,* 505 F.2d 1378 (5th Cir. 1975).

Third, the prosecutor did not attempt to capitalize on this testimony. No reference to the testimony was made during the remainder of the trial. The prosecutor did not argue the substantive or impeachment possibilities of such testimony. *Compare United States v. Meneses-Davila,* 580 F.2d 888 (5th Cir. 1978).

Fourth, the trial court found that defendant opened the door to comment by giving the impression that Dixon had fully cooperated with the authorities. The district court relied on the following portion of defendant's direct testimony to reach that conclusion:

> Q: Now Mr. Dixon have you had the occasion to speak with Officer Boe a number of times?
>
> A: Yes, I have.
>
> Q: How many times?
>
> A: Four or five times.

This court has recognized in two pre-*Doyle* cases that while references to a defendant's previous silence are excluded for the purpose of protecting certain rights of the defendant, such evidence is not excluded "so that the defendant may freely and falsely create the impression that he had cooperated with the police when, in fact, he had not." *United States v. Fairchild,* 505 F.2d 1378, 1383 (5th Cir. 1975). *See United States v. Griffen,* 530 F.2d 101 (5th Cir. 1976). In *Doyle,* the Supreme Court held that previous silence of a defendant could not be offered to impeach an exculpatory story offered by defendant at trial. Two considerations guided the Court's reasoning. First, the Court recognized that implicit in the *Miranda* warning that one has the right to remain silent is the promise that one will not be punished for remaining silent. Second, the Court noted that silence does

not rebut an exculpatory story offered at trial and therefore its probative value is questionable. *Doyle,* however, did not cover the situation where a defendant takes the stand and testifies in such a fashion that reasonable persons might infer that he has freely cooperated with the authorities.[3] While one might reasonably conclude from *Miranda* warnings that one's silence cannot be used as evidence of guilt, it is not reasonable to conclude from *Miranda* warnings that you have the right to remain silent only later to take the stand and indicate that your cooperation had been free flowing. In addition, impeachment of the exculpatory story is not the goal of the testimony. Rather, the testimony is offered to rebut the inference of cooperation. Surely this evidence should be before the jury. Nothing in *Doyle* suggests otherwise.

■ In the instant case, defendant took the stand and testified. His testimony arguably created the inference that he had been cooperating with the police. It was not improper for the district court to allow that inference to be met with rebuttal testimony that defendant had not, in fact, cooperated with the authorities.

Fifth, the evidence of Dixon's guilt is strong. Hightower, a longtime acquaintance of Dixon, testified that it was Dixon's voice on the extortionate phone call. The paint scrapings on the jon-boat matched those on Dixon's car. The rope at Dixon's home matched the rope on the boat in which the "money" was placed. In light of this evidence and the four other factors discussed above, we decline to hold that the trial court's denial of defendant's motion for mistrial was error.[4]

### ALLEN CHARGE

■ The second issue raised by appellant concerns the propriety of the *Allen* charge given by the trial court.[5] An almost identi-

---

**3.** *See Chapman v. United States,* 547 F.2d 1240, 1243 n.6 (5th Cir. 1977) (dictum) (*Griffen-Fairchild* doctrine "clearly survives *Doyle* ").

**4.** In light of the identification testimony, the paint scrapings and the rope found at Dixon's home, appellant's sufficiency claim must fail.

**5.** The Court charged the jury as follows:

> THE COURT: All right, sir, let me—have a seat, if you will. Let me say this to all of you, ladies and gentlemen of the jury. First of all, I know that you're attempting to discharge your responsibilities in conscientious manner. How-

cal charge was approved by this Court in *Thaggard v. United States,* 354 F.2d 735 (5th Cir. 1965) where we stated:

> Such a charge, so long as it makes plain to the jury that each member of the jury has a duty conscientiously to adhere to his own honest opinion and avoids creating the impression that there is anything improper, questionable, or contrary to good conscience for a juror to cause a mistrial, is still a permissible charge to be given in proper circumstances in this Circuit.

*Id.* at 739 (citations omitted).[6] The charge in this case was within the permissible bounds of an *Allen* charge.

In accordance with the foregoing, appellant's conviction is Affirmed.

ever, I want to charge you additionally at this time that this, like any case, is an important case. All trials are expensive. Your failure to agree upon a verdict will necessitate another trial equally as expensive.

It is desirable that you should reach a verdict. Let me say to you that this Court does not desire that any juror should surrender his or her conscientious convictions. On the other hand, each juror should perform his or her duty conscientiously and honestly according to the law in this case and according to the evidence in the case.

And although the verdict to which a juror agrees must, of course, be that juror's own verdict, the result of that juror's own convictions, and not a mere acquiescence in the conclusion of the fellow jurors, yet in order to bring twelve minds to a unanimous result you jurors must examine the questions submitted to you with candor and with a proper regard and deference to the opinions of the other members of the jury.

You should consider that this case must at some time be decided; that you were selected in the same manner and from the same source from which any future jury must be selected; and that there is no reason to suppose that this case will ever be submitted to jurors more intelligent, more impartial or more competent to decide it than are you.

In conferring together you ought to pay proper respect to each other's opinions with a dis-

position to be convinced by each other's arguments. On the one hand if much the larger number of your panel are for a conviction a dissenting juror should consider whether a doubt in his own mind is a reasonable one which makes no impression upon the minds of so many equally honest, equally intelligent fellow jurors with himself or herself who have heard the same evidence with the same attention and with an equal desire to arrive at the truth of the matter and under the sanction of the same oath.

On the other hand if a majority are for an acquittal the minority ought seriously to ask themselves whether they may not reasonably and ought not to doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated on the jury and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellow jurors.

Ladies and gentlemen of the jury, with this additional charge to you I'm going to ask you to again retire from this jury room, from this courtroom, and to again consider whether or not you may arrive at verdict. You may now retire, if you will.

6. *Thaggard* has since been embraced en banc in *United States v. Bailey,* 480 F.2d 518 (5th Cir. 1973).