JOURNAL ENTRY AND OPINION
Defendant-appellant Levert Ervin appeals his conviction in the Court of Common Pleas for rape and attempted rape. For the following reasons, we affirm the decision of the trial court.
This case arose from allegations that defendant had sexual relations with his eight-year-old daughter over an extended period of time.
Defendant was indicted by the Cuyahoga County Grand Jury for thirteen counts of rape of a minor, in violation of R.C. 2907.02 and one count of attempted rape, in violation of R.C. 2923.02 and 2907.02. On April 23, 2001, the trial began.
At trial, the victim testified that she was eight years old at the time of the rapes. She testified that her father, the defendant, raped her a lot. She testified that she did not tell anyone because she was scared and because the defendant promised to stop. She testified that her babysitter, Minister Agnus Langford Smith, was the first person she told and that several days later she was taken to Children and Family Services.
In addition to the victim, the State called Minister Agnus Langford Smith, the victim's babysitter and a minister at the church where the victim attended. She testified that she watched the victim and her brother before and after school while the defendant worked. She testified that the victim spent the night at her house on Friday, January 21, 2001, and told her what her father had done to her.
The State called Ian Lucash, a social worker with Children and Family Services, who testified that the victim told him what happened on January 23, 2001. He testified that he was sent to investigate after the hotline received an anonymous tip that the victim was being molested by her father. Lucash testified that the victim identified her father as the violater. Lucash referred the victim to Dr. Feingold for an examination. Lucash also testified that he interviewed the defendant. During that interview, the defendant denied the allegations and told Lucash that he puts lotion on his daughter because she has a skin condition called psoriasis. He also told Lucash that he had a sexual relationship with his girlfriend and that he was impotent.
The State called Dr. Feingold. He testified that he first met the victim on February 1, 2001, as the result of a referral from Lucash. The victim allowed Dr. Feingold to perform an internal physical examination and described the sexual assaults in detail. He opined that sexual abuse probably occurred.
The State called Det. Karl Lessmen of the Cleveland Police Sex Crime Unit. He testified that he observed the interview between Ian Lucash and the victim from behind a one-way mirror. After listening to the child's statement, Det. Lessmen determined that there was a disclosure of sexual abuse and continued the investigation. The following day, he interviewed the defendant and subsequently arrested him.
The State also called LaQuawana Farmer, the twenty-six year-old daughter of the defendant. She testified that between the ages of eight and twelve years old the defendant had sex with her.
Finally, the State called Rasheeda Ervin, the twenty-five year-old niece of the defendant. She testified that defendant sexually molested her when she was eight years old.
The defense presented one witness on his behalf: his sister, Annie Floid. Ms. Floid testified that the defendant and the victim lived with her for a period of time in 1998 and 1999. She testified that she never saw or heard anything during that time. She also testified that the victim told her that she only said her father had abused her because she was tired of the social workers asking her the same questions over and over. (Tr. 1152).
On May 4, 2001, the jury found defendant guilty of thirteen counts of rape and one count of attempted rape as charged in the indictment. Defendant appeals the verdict and raises ten assignments of error which will be addressed in the order presented and together where appropriate to the discussion.
 I.
Defendant was denied due process of law when the trial court allowed a social worker and doctor to repeat statements made to them by Laura Ervin in violation of appellant's Sixth Amendment right to confront witnesses against him.
In this assignment of error, defendant claims that he was denied a fair trial when the trial court made erroneous evidentiary rulings. Specifically, defendant claims that the trial court should not have permitted Dr. Feingold and Ian Lucash to testify to what the victim told them. We disagree.Evid. R. 803(4) permits statements made for purpose of medical diagnosis or treatment as an exception to the hearsay rule:Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms; pain or sensations, or the inception of general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
This Court has consistently held that a young rape victim's statements to social workers, clinical therapists and other medical personnel are admissible under Evid.R. 803(4) as long as they were being made for purposes of diagnosis and treatment. State v. Chappell (1994),97 Ohio App.3d 515, 531; State v. Walker (June 27, 2002), Cuyahoga App. Nos. 79586 79695; State v. Kurpik (June 27, 2002), Cuyahoga App. No. 80468; State v. Grider (Feb. 10, 2000), Cuyahoga App. No. 75720; State v. Valentine (July 17, 1997), Cuyahoga App. No. 71301; State v. Hogan (June 8, 1995), Cuyahoga App. No. 66956; State v. Black (May 19, 1994), Cuyahoga App. No. 65563; State v. Shepherd (July 1, 1993), Cuyahoga App. No. 62894; State v. Duke (Aug. 25, 1988), Cuyahoga App. No. 52604; State v. Cottrell (Feb. 19, 1987), Cuyahoga App. No. 51576; State v. Negolfka (Nov. 19, 1987), Cuyahoga App. No. 52905.
Here, Dr. Feingold treated and diagnosed the victim following her allegations of sexual abuse and rape. His testimony was properly admitted. Similarly, Ian Lucash, a social worker from the Cuyahoga County Department of Children and Family Services, interviewed the victim and received a detailed statement and history from her, which he then provided to Dr. Feingold. Indeed, Dr. Feingold testified that he relies upon the information from the social worker's interview in treating the victim. (Tr. 1022). Lucash's function included at least diagnosis and was also properly admitted. See State v. Dye (March 12, 1997), Summit App. No. 17763; In re: Nicholas Tardiff (Dec. 3, 1997), Summit App. No. 18455; State v. Jones (Dec. 23, 1999), Cuyahoga App. No. 75390. Defendant's first assignment of error is overruled.
 II.
Trial court denied appellant due process of law when it allowed social worker to testify about interview conducted with Laura Ervin, although his notes had been deliberately destroyed.
In his second assignment of error, defendant argues that he was denied a fair trial when the trial court allowed Ian Lucash to testify about his interview with the victim when his handwritten notes had been deliberately destroyed. We disagree.
This Court has previously held that a defendant's constitutional rights are not violated when a social worker destroys the original notes from an interview with a young rape victim where defense counsel has a full opportunity to cross-examine the social worker regarding the interview with the victim and to raise any questions regarding his or her credibility. State v. Valentine (July 17, 1997), Cuyahoga App. No. 71301. Here, defense counsel fully cross-examined Ian Lucash regarding his interview with the victim and had the opportunity to raise any questions regarding his credibility. In addition, Lucash testified that his typewritten report accurately represented what the victim said to him, that the report was based on his notes, and that he destroyed the notes only after typing the report. Defendant's second assignment of error is overruled.
 III.
Trial court denied appellant due process of law when it allowed Dr. Feingold to testify that the result of the interview with Laura Ervin revealed `probable' abuse without any factual support.
 V.
The trial court denied appellant due process of law when it allowed social worker Ian Lucash to testify that statements made to him revealed sexual abuse.
In these assignments of error, defendant argues that the trial court denied him a fair trial when it allowed Dr. Feingold and Ian Lucash to express their opinions that sexual abuse occurred. We disagree.
The Ohio Supreme Court has held that an expert's opinion testimony on whether a child has been sexually abused is helpful to jurors and is admissible under Evid.R. 702 and 704. See State v. Gersin (1996),76 Ohio St.3d 491, 494; State v. Boston (1987), 46 Ohio St.3d 108, 128; State v. Wolf (Dec. 30, 1994), Lake App. No. 93-L-151.
Here, Dr. Feingold testified that he believed that sexual abuse had probably occurred. (Tr. 1054). He based his opinion on an internal medical examination of the victim, the victim's statements to him and the child's medical history. His testimony was properly admitted.
With regard to the testimony of Ian Lucash, the record fails to reveal that he testified that he concluded that sexual abuse occurred. Rather, he stated during cross-examination that the victim's knowledge of sex means something — she has to have been exposed to some sexualized behavior, which lends credibility to her. Lucash's statement was made in response to a direct question by defense counsel whether the victim would be more typical to make this up? (Tr. 276). His testimony was properly admitted.
Defendant cites State v. Davis (1989), 64 Ohio App.3d 334, for the proposition that any expert testimony on the subject of whether a victim was sexually abused is inadmissible where the victim is articulate, competent, and testifies at trial. Defendant's reliance on State v. Davis, is misplaced. In Davis, the experts based their testimony on behavioral characteristics of the alleged victim, and not upon actual physical examinations, as did Dr. Feingold and Ian Lucash.
Defendant's third and fifth assignments of error are overruled.
 IV.
The trial court denied appellant due process of law and denied appellant his constitutional right to a trial by jury in violation of Article I, Section 10 of the Ohio Constitution and the Sixth Amendment of the United States Constitution when it allowed Social Worker Ian Lucash and Dr. Feingold to testify as to child victim's veracity.
In his fourth assignment of error, defendant claims that the trial court abused its discretion in permitting Dr. Feingold and Ian Lucash to express their opinions as to whether the victim truthfully recounted instances of sexual abuse to them. We disagree.
An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant. State v. Boston (1989),46 Ohio St.3d 108. However, an expert may provide testimony that supports "the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." State v. Stowers (1998),81 Ohio St.3d 260, 262-263.
Here, during cross-examination, defense counsel asked Lucash if the victim would be more typical to make this up? Lucash responded by stating that the victim's knowledge of sex means something — she has to have been exposed to some sexualized behavior, which lends credibility to her.
The State did not ask Lucash to express his opinion about the victim's veracity. Rather, defense counsel opened the door for Lucash to comment on the credibility of the victim. In responding to defense counsel's questioning, Lucash did not state that the victim was telling the truth, or that he did not believe she was lying, but merely that she had some credibility. Thus, we find that Ian Lucash did not make any improper statements with regard to the veracity of the victim.
With regard to the testimony by Dr. Feingold, defendant has not cited to, and the record fails to reveal, any instances where Dr. Feingold testified as to the victim's veracity. Rather, Dr. Feingold concluded that the victim's statements to him during the medical examination were consistent with the details he received from Children and Family Services. (Tr. 1047-1048). A witness may testify to the consistency of prior statements. See State v. Valentine (July 17, 1997), Cuyahoga App. No. 71301; State v. Demiduk (June 24, 1998), Columbiana App. No. 96-C0-16; State v. Curtis (Oct. 20, 1988), Cuyahoga App. No. 54525; State v. Duke (Aug. 25, 1988), Cuyahoga App. No. 52604; State v. Nichols (May 5, 1988), Cuyahoga App. No. 53729.
Defendant's fourth assignment of error is overruled.
 VI.
Trial court denied appellant due process of law when it allowed doctor to testify as to a study that he hid not perform or have personal knowledge thereof.
In this assignment of error, defendant argues that the trial court should not have permitted Dr. Feingold to testify about a study performed by Dr. Amy Beranson because he did not perform the study or have personal knowledge of it. We disagree.
Many Ohio jurisdictions, including this one, have allowed expert opinion testimony under Evid.R. 703 even though the expert's opinion was based in part on statistics published by other sources. State v. Flowers (May 4, 2000), Franklin App. No. 99AP-530; State v. Powell (Dec. 15, 2000), Montgomery App. No. 18095; State v. Stokes (Dec. 11, 1997), Cuyahoga App. No. 71654; State v. Breeze (Nov. 24, 1992), Franklin App. No. 92AP-258; State v. Drain (Dec. 29, 1995), Franklin App. No. 95APA03-351.
Here, Dr. Feingold personally conducted a physical examination of the victim. Although he cited Dr. Beranson's study during his direct examination, his testimony was based on his own observations. Where an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied. State v. Solomon (1991), 59 Ohio St.3d 124.
Defendant cites State v. Chapin (1981), 67 Ohio St.2d 437, for the proposition that an expert witness can not offer opinion testimony when his conclusions are based upon writings which he did not prepare and which are not admitted into evidence. Defendant's reliance on State v. Chapin is misplaced. In Chapin, there was no indication that the psychiatrist called to testify ever personally examined the victim, as did Dr. Feingold. Defendant's sixth assignment of error is overruled.
 VII.
Trial court denied appellant due process of law when it allowed other acts evidence concerning appellant's past sexual history to be introduced.
In his seventh assignment of error, defendant argues that the trial court erred in allowing the State to elicit testimony from two other witnesses about acts of sexual molestation by the defendant that occurred 18 years prior to the indictment in this case. We disagree.
As a general rule, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he stands trial is not admissible to show that the defendant acted in conformity with his bad character. State v. Elliott (1993),91 Ohio App.3d 763, 770. However, Evid.R. 404(B) states that other acts testimony may be admissible for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence of other acts may also be admissible to establish an element of the crime. State v. Smith (1990),49 Ohio St.3d 137, 139-40.
Evidence regarding prior acts of molestation upon other individuals or family members, even if not included in the indictment, has been permitted in numerous Ohio jurisdictions, including this one. In State v. Cornell (Nov. 27, 1991), Cuyahoga App. No. 59365, testimony of other acts was material in establishing defendant's pattern of conduct, specifically, his attraction to boys under the age of 16. In State v. Love (June 4, 1997), Hamilton App. No. 960498, evidence of other acts was material in demonstrating defendant's pattern of becoming involved with single mothers with prepubescent daughters so that he had sexual access to the daughters while the mothers were unavailable to protect them. In State v. Wright (June 20, 1985), Franklin App. No. 85AP-79, testimony of other acts was admissible to show absence of mistake (e.g. accidental touching) where the defendant claimed that the victim merely sat in his lap. In State v. James (Aug. 24, 1995) Hardin App. No. 6-94-18, evidence of the defendant's past sexual activity with his daughter was admissible to help prove the element of force in a subsequent rape trial. See, also, State v. Colvin (Aug. 16, 1989), Hamilton App. No. C-880430 (evidence of other acts of sexual abuse and violence directed toward his stepdaughter and other family members was admissible at trial because it was relevant and material to prove an element of force).
Here, evidence of defendant's previous sexual advances toward LeQuanwana and Rasheeda, both eight years old at the time of the abuse, was presented to demonstrate defendant's pattern of engaging in sexual intercourse with young girls in his family while occupying a position of trust and authority. The evidence was also introduced to demonstrate that defendant's actions with the victim were not accidental or mistaken i.e., that defendant only touched the victim while she was recovering from a hernia operation[1] or that he was only touching her to apply lotion to her psoriasis. Finally, evidence of other acts helped to establish an element of the charged crime. Specifically, LeQuawana and Rasheeda's testimony concerning defendant's alleged prior sexual conduct helped to demonstrate that defendant purposely compelled the victim to submit by force or threat of force.[2]
On the record before us, the probative value of the evidence was not substantially outweighed by the possibility of unfair prejudice. State v. Mathews (1984), 14 Ohio App.3d 440. Thus, the trial court did not err by admitting evidence of the prior acts of sexual molestation toward other victims by the defendant. Defendant's seventh assignment of error is overruled.
 VIII.
Trial court violated appellant's constitutional right to exercise hisFifth Amendment privilege against self-incrimination pursuant to theFifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 and 16 of the Ohio Constitution when Det. Lessman testified that appellant refused to make a statement after being advised of his constitutional rights.
In his eighth assignment of error, defendant claims that he was denied a fair trial when the trial court allowed Detective Karl Lessman to testify that the defendant refused to make a statement after being advised of his constitutional rights. We disagree.
An arrested person's exercise of his constitutional right to silence cannot be used to impeach that defendant at trial. Doyle v. Ohio (1976),426 U.S. 610, 618; Wainwright v. Greenfield (1986), 474 U.S. 284, 295. However, a single isolated reference to post-arrest silence is not reversible error. U.S. v. Dixon (5th Cir. 1979), 593 F.2d 626. See, also, State v. Mosley (March 4, 2002), Stark App. No. 2001CA00142; State v. Kelly (July 12, 2001), Cuyahoga App. No. 78422; State v. Lute (Nov. 22, 2000), Lorain App. No. 99CA007431; State v. Schirtzinger (Aug. 3, 1988), Licking App. No. CA-3348.
Here, during direct examination, the prosecutor asked Det. Lessman whether he had talked with defendant after the victim identified him as the perpetrator. In response, Det. Lessman testified as follows:
 Det. Lessman: * * * I approached him, I introduced myself to him, advised him who I was, what the investigation was, and at that time I advised him of his constitutional rights. Asked him to come to my office, which he did so. I interviewed him briefly. Just general information about his name, occupation, his family members, stuff like that. And then I asked him, tried to get directly to the substance of the allegations against him.
Mr. P. Mancino: Your honor, may we approach for a second?
The Court: No. Overruled.
A: And at that time he declined to make any statement.
Mr. P. Mancino: Move that be stricken.
The Court: Overruled. (Tr. 1117).
The record shows that the State did not use the witness' post-silence comment in any prejudicial manner. The State did not use defendant's post-arrest silence for impeachment purposes in cross-examination or in closing argument. The State did not make evidentiary use of defendant's silence as evidence of defendant's guilt. In fact, defendant's post-arrest silence was never mentioned again in any context throughout the trial. Accordingly, we find no error.
Defendant's eighth assignment of error is overruled.
IX. Trial court violated defendant's constitutional right to exculpatory evidence when it denied request for independent medical exam of child victim.
In this assignment of error, defendant claims that he was denied his right to exculpatory evidence when the trial court denied his request for an independent medical examination of the victim. We disagree.
Pursuant to Civ.R. 35(A), a physical examination may only be ordered "for good cause shown." Where a physical examination has already been performed, a trial court does not abuse its discretion in denying a motion for an independent physical examination where the movant presents no reasons for the request. State v. Craver (April 24, 1989), Montgomery App. No. CA-11101. Moreover, a defendant's constitutional rights are not violated when his request for an independent medical examination is denied where defense counsel has a full opportunity to cross-examine the physician regarding the examination of the victim. See State v. Malroit (Nov. 8, 2000), Medina App. No. 3034-M.
Here, defendant filed a motion requesting an independent physical examination of the victim. He failed to set forth any reasons for the request, let alone good cause. Defendant was provided with a copy of Dr. Feingold's medical report. Defense counsel fully cross-examined Dr. Feingold regarding his medical examination of the victim and had the opportunity to raise any questions regarding his credibility. Accordingly, the trial court did not err in denying defendant's request for an independent medical examination.
Defendant's ninth assignment of error is overruled.
 X.
Over defense counsel objection, appellant was denied his constitutional right of confrontation when the court allowed the deposition of Social Worker Ian Lucash.
In his tenth and final assignment of error, defendant claims that he was denied a fair trial when the trial court allowed the deposition of Ian Lucash to be played before the jury. We disagree.
Pursuant to Crim.R. 15(f), deposition testimony may be used during a trial in lieu of live testimony if the witness is unable to testify because of sickness or infirmity; or the party offering the deposition has been unable to procure the attendance of the witness by subpoena. The use of a videotaped deposition during a trial does not violate a defendant's right to confrontation so long as the defendant and his attorney were present during the deposition and defendant's attorney was able to cross-examine the witness. State v. Phillips (1995),74 Ohio St.3d 72, 95; State v. Brumley (March 29, 1996), Portage App. Nos. 89-P-2092 and 89-P-2099; State v. Jones (July 5, 1985), Montgomery App. No. 8885.
Here, the State moved to admit Lucash's videotaped deposition because Lucash was scheduled for surgery at the time of trial. Defendant was present during the entire deposition, Lucash was under oath when he testified, and was subject to full cross-examination by defendant's attorney during the deposition.
Defendant's tenth assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., and ANN DYKE, J., CONCUR.
[1] The victim had hernia surgery several weeks before she disclosed the sexual abuse. Defense counsel has raised the inference that defendant touched the victim only to aid her in her recovery.
[2] In cases involving children "coercion is inherent in the parent-child relationship and under these special circumstances force need not be overt and physically brutal, but can be subtle and psychological. State v. Eskridge (1988), 38 Ohio St.3d 56, 58-59.